[Criminal No. 547.   Filed February 6, 1923.]

[212 Pac. 458.]

PAUL V. HADLEY, Appellant, v. STATE, Respondent.

1. CRIMINAL LAW—DENIAL OF CONTINUANCE FOR ABSENCE OF WITNESSES HELD NOT ERROR.—Where accused, on a second trial for murder, requested a continuance because of the absence of material witnesses, and the state offered to let their testimony at the first trial be read, *held* that, in the absence of any showing that they would testify differently or more fully than before, a denial of the continuance was an exercise of the proper and sound discretion of the court.

2. CRIMINAL LAW—RULING ON MOTION FOR CONTINUANCE ASSUMED CORRECT, WHERE SHOWING MADE IN SUPPORT THEREOF NOT BEFORE APPELLATE COURT.—The court's ruling on a motion for a continuance is assumed correct, where the showing made in support of such motion is not before the appellate court for review.

3. CRIMINAL LAW—SELF-SERVING TESTIMONY AS TO ACCUSED'S ACTIONS AFTER LEAVING SCENE OF MURDER HELD PROPERLY STRICKEN.—

---

1. Avoiding continuance by admitting proposed testimony of absent witness, see note in Ann. Cas. 1913C, 488.

See 16 C. J., pp. 474, 572, 619, 635, 882, 885; 17 C. J., pp. 167, 219, 222, 241, 317; 40 Cyc. 2239, 2610, 2640, 2642.

In a prosecution for murder, testimony by accused that after leaving the scene of the tragedy he met some Indians and asked for a drink and directions *held* properly stricken, since, if material, coming from him, it was a self-serving declaration, the materiality of which should have been shown by someone else, and particularly where it was clearly immaterial.

4. CRIMINAL LAW—APPELLATE COURT WILL NOT ASSUME TROUSERS ADMITTED IN EVIDENCE WERE BLOODY WHEN NOT SHOWN BY EVIDENCE OR OBJECTION BELOW.—In a prosecution for murder, where the trousers worn by the husband of deceased when they were attacked were admitted in evidence over defendant's objection and on appeal their admission was assigned as error on the ground that they were bloody and excited prejudice, *held*, since they were not described or characterized either in the testimony or in the objection below as having any blood marks on them or other evidence tending to excite pity or prejudice, and since they were not before the appellate court for inspection, as permitted by Civil Code of 1913, paragraph 1256, that the court could not assume such condition existed.

5. CRIMINAL LAW—ASSIGNMENTS OF ERROR MUST BE TRIED ON RECORD, NOT ON COUNSEL'S STATEMENTS.—Assignments of error must be tried on the record, and not on what counsel say.

6. CRIMINAL LAW—CLOTHING MAY BE PROPERLY ADMITTED IN EVIDENCE.—Clothing may be properly admitted as evidence in cases where it affords evidence of the character of the wounds and the manner in which they were inflicted, or where doctors and other witnesses disagree as to conditions, or as part of the *res gestae*, or as forming a link in a chain of circumstantial evidence; but it should not be admitted where the sole purpose is to excite pity or prejudice by reason of its bloody or gruesome condition.

7. CRIMINAL LAW—ADMISSION OF TROUSERS IN EVIDENCE HELD NOT PREJUDICIAL IN PROSECUTION FOR MURDER.—In a prosecution for murder, admission of trousers worn by deceased's husband at the time they were attacked, with other clothing, *held* not prejudicial to accused.

8. CRIMINAL LAW — QUALIFICATION OF WITNESS IS WITHIN TRIAL COURT'S DISCRETION.—The qualification of witnesses called to testify concerning matters within their observation or experience is a question in the first instance for the trial court, and is largely within the court's discretion, and will not be reviewed except where discretion was abused.

9. CRIMINAL LAW—WHERE WITNESS' QUALIFICATION IS IN DOUBT, THERE SHOULD BE A PRELIMINARY EXAMINATION AS TO COMPETENCY.—If a party is in doubt as to the qualification of a witness, he should examine him in that regard preliminarily, so that

the court will be advised of the knowledge of the witness and may intelligently decide the question of his competency.

10. CRIMINAL LAW—MOTION TO STRIKE TESTIMONY HELD PROPERLY DENIED, WHERE PART OF EVIDENCE WAS ADMISSIBLE. — In a prosecution for murder, where a witness testified extensively in a semi-expert manner as to experiments he had carried on with defendant's 32-caliber Mauser pistol and other pistols of the same caliber, describing the markings made on bullets fired from the different pistols, *held,* that a motion to strike the whole because the witness had failed to qualify as an expert was properly denied, since part of the evidence given was properly admissible.

11. CRIMINAL LAW—UNLESS COUNSEL OBJECT TO IMPROPER TESTIMONY WHEN OFFERED, OBJECTION IS WAIVED.—It is incumbent upon counsel to object to improper testimony at the time it is offered, or the objection is deemed waived.

12. WITNESSES—IN ABSENCE OF STATUTE, FORMER CONVICTION MAY BE SHOWN BY RECORD OR CROSS-EXAMINATION — RECORD, BEST EVIDENCE, ALWAYS ADMISSIBLE.—In the absence of statute, when defendant offers himself as a witness, it may be shown, either by the record or on cross-examination, that he has suffered previous conviction of a felony; the record being the best evidence and always admissible.

13. WITNESSES—DIRECT TESTIMONY OF FORMER CONVICTION WILL NOT PREVENT SHOWING NATURE OF CRIME—WEIGHT OF IMPEACHING EVIDENCE DEPENDS ON WHETHER CRIME SHOWN INVOLVED MORAL TURPITUDE.—In a criminal prosecution, testimony by accused on direct examination that he had been previously convicted of a felony *held* not to prevent the prosecution from showing the nature of the crime, and its weight as evidence depends on whether the crime involved moral turpitude or was merely *malum prohibitum.*

APPEAL from a judgment of the Superior Court of the County of Pima. Samuel L. Pattee, Judge. Affirmed.

Mr. Louis R. Kempf, Mr. K. Berry Peterson and Mr. James R. Dunseath, for Appellant.

The Attorney General, for the State.

ROSS, J.—Defendant is under sentence of death upon a conviction of murdering Anna ·C. Johnson, on November 15, 1921, in Pima county. He was

informed against under the name of William S. Esta-
ver; but during the trial it developed that his true
name was Paul V. Hadley, and the proceedings there-
after were carried on under his true name. He
appeals.

We do not think it necessary to set out the harrow-
ing details of the crime only as it becomes necessary
to elucidate the errors defendant complains were
committed in the course of the trial. He was tried
twice, the first jury failing to agree upon a verdict.
On April 22, 1922, the case was set down for a retrial,
May 15th. This setting was later vacated and the case
reset for May 19, 1922. Upon the call of the case
for trial, defendant's counsel presented a motion for
a continuance on account of the absence of material
witnesses. We assume it appeared from the motion
and affidavit in support thereof, or otherwise, that the
witnesses were out of the jurisdiction of the court at
the time, but that they had testified in the previous
trial of defendant upon the same charge. The action
of the court thereon, as shown by the minutes, is:

"Motion was by the court denied for the reason
that the county attorney consents that the testimony
of said witnesses given on the former trial of this
case may be read."

The court's refusal to grant a continuance is as-
signed as the first error. The motion and affidavit
supporting it are not in the record on appeal, and
therefore not available for examination as to the
sufficiency of their contents. Although the court's
denial is based upon other grounds, it may be that the
showing for continuance was entirely inadequate. Un-
less the showing was that such witnesses would
testify to a different state of facts than in the former
trial, or to additional facts material to his case,
we think the denial of the continuance was in the
exercise of a proper and sound discretion. At all

events, the showing not being before us, we must assume that the court's ruling thereon was correct.

The next assignment is directed at an order of the court striking out a statement made by defendant while testifying in his own behalf. He testified that some time after he left the scene of the tragedy he met some Mexicans or Indians, in an automobile, and asked them for a drink of water and some directions. Upon motion of the county attorney, this was stricken, and, we have no doubt, properly so. If the fact that defendant asked for a drink, or directions, was material, he should have proved it by someone other than himself, for coming from him it would be self-serving. Aside from that, it was clearly immaterial; it did not tend to prove any fact in issue.

The introduction of the trousers of Peter Johnson, worn at the time Anna C. Johnson was killed, over defendant's objection, is next assigned as error. To obtain a clear understanding of this assignment, it will be necessary at this point to set out some of the facts:

Peter Johnson and Anna C. Johnson, his wife, and defendant had never met until November 14, 1922. The defendant, coming from California by train, arrived in Tucson November 13th; and the Johnsons, traveling by automobile, arrived in Tucson the afternoon of the 14th. The Johnsons stopped in front of a service station, Mrs. Johnson remaining in the car, while her husband alighted to make some inquiries. When the latter returned to the car, he found defendant talking to Mrs. Johnson. Defendant told the Johnsons that he was traveling by automobile going east from California; that his machine had broken down between Sentinel and Ajo; that he had come to Tucson for repairs, and expressed the wish to ride with the Johnsons (who were on their

way from the east to California) to the place where his car had been left. The Johnsons, being fully loaded, declined at that time to allow defendant a seat, but, upon reflection, later found him and told him that if he would pay the expressage on their trunk to Los Angeles they could accommodate him. The defendant gave his assent, and the following morning the trunk was expressed to Los Angeles; he paying the charges. The three of them left Tucson between 8 and 9 o'clock the morning of the 15th. Peter Johnson, who was operating the car, occupied the left front seat, and his wife sat on his right. Defendant occupied the left rear seat, the right side of that seat being filled with bedding and other luggage. In this position they proceeded on their way until they passed Ajo some twenty-nine miles, it being their purpose to reach Sentinel before stopping for the night. It was about eight o'clock, and some time after the sun had set, when, according to the story of Peter Johnson, the defendant, from his position in the back seat, shot him, Peter Johnson, four times, twice in the neck, once through the shoulder, and once through the fleshy part of the right arm; and shot Anna C. Johnson three times, once in the left ear, once in the back of the head just to the right of the median line, and once through the neck.

The defendant's version of the matter was that they were ambushed and shot by parties from the roadside.

Peter Johnson, although severely wounded, suddenly started the car (which had stopped during the shooting), and as it lunged forward the defendant jumped, or fell, from the car. Some fifteen miles from this point Johnson stopped the car and discovered that Anna C. Johnson, his wife, was dead.

While Peter Johnson was testifying, and after he had detailed the facts and circumstances as above outlined, he was asked the question as to how he was dressed at the time of the shooting, and, having answered that he was wearing a pair of trousers, a vest and coveralls, the coveralls were produced and offered in evidence, as also his shirt, without any objection. When, however, his trousers were offered, they were objected to on the ground that the evidence was immaterial, incompetent and irrelevant, and had no tendency to prove any issue in the case. This objection was overruled and the trousers were introduced as evidence.

As before stated, this ruling is assigned as error. The principal reason urged against the trousers as evidence is that they did not tend to throw any light upon the nature and location of wounds upon the body of the witness, since all his wounds were upon the upper part of his body. It is said "they possessed not the slightest probative value; they proved nothing." We think it may be said that while perhaps they proved nothing, it is not shown that they could possibly have had any prejudicial effect upon the jury. While counsel in their argument speak of the trousers being bloody, there does not seem to be a scintilla of evidence to that effect. The reason given by the courts for rejecting clothing that illustrates no point is that they, being covered with blood, can have no other effect than to excite prejudice in the minds of the jury against the defendant. The coveralls were let in without objection, and since, as their name implies, they must have been worn outside of and over the trousers, they, too, should be covered with blood, and yet that part of them that covered his trousers shows only a few scattered spots of blood. The objection made by defendant's counsel to the introduction of

the trousers is, not that they would have a tendency to excite the jury's prejudice by reason of their gruesome or bloody appearance, but that they were, as evidence, incompetent, immaterial and irrelevant. The objection now urged was not suggested.

The rest of the clothing of Peter Johnson introduced in evidence was sent to this court upon the written request of defendant, but there was no request of the clerk of the superior court to send up the trousers and they are not here as an exhibit. The statute (paragraph 1256, Civil Code) makes it the duty of the party appealing to file with the clerk "a notice specifying the papers or portions of the record which he deems necessary to present the questions involved on such appeal." Since the trousers were not described or characterized, either in the testimony or the objections to their introduction, as having any blood marks upon them, or other evidence tending to excite pity or prejudice, and they not being here for inspection, we will not assume the existence of that condition. We must try the assignment upon the record, and not upon what counsel say.

We are convinced that the authorities cited by defendant upon this question have no application to the state of facts before us. The rule is well settled that clothing may be properly admitted as evidence in cases where they afford evidence of the character of the wounds and the manner in which they were inflicted, or where doctors and other witnesses disagree as to conditions, or as a part of the *res gestae,* or as forming a link in the chain where the evidence is circumstantial. *State* v. *Stansbury,* 182 Iowa, 908, 166 N. W. 359. But they should not be admitted when their sole purpose is to excite the pity or prejudice of the jury by reason of their bloody or gruesome condition. *State* v. *Moore,* 80 Kan. 232, 102

Pac. 475; *State* v. *Stansberry, supra.* The evidence complained of does not fall within the latter rule, and it is not conceivable that its admission could have prejudicially affected the rights of defendant.

The next assignment of error is that the witness A. J. Eddy was permitted to testify for the prosecution as an expert without qualifying.

At the time defendant was arrested he had in his possession a 32-caliber Mauser pistol, and there was found in a handbag of his in the Johnson automobile the larger part of a box of 32-caliber cartridges. Two 32-caliber bullets were taken from the body of Mrs. Johnson and another one was found where she was fatally wounded. Eddy was called by the prosecution to explain some experiments and investigations he had carried on during the previous three months with defendant's pistol, and other 32-caliber pistols of different makes. When it developed in the preliminary examination of the witness by the prosecution that the purpose was to show by him the results of his experiments and investigations, counsel for defendant merely suggested that he should show expert knowledge before being permitted to testify, and thereupon the county attorney stated he was not attempting to qualify Mr. Eddy as an expert, but to show the results of his investigation. The witness thereupon proceeded to detail what he had done in the way of experimentation and investigation with defendant's pistol, and, incidentally, as side lights, described the riflings of a Mauser 32 and other makes of 32-caliber, and the markings on bullets discharged from such guns, and pointed out to the jury the similarity of bullets he had shot from defendant's pistol to those bullets taken from the body of deceased, and the dissimilarity of these to other 32-caliber bullets shot from makes differing from the Mauser; and gave much other testimony

of an expert or semi-expert kind, covering in all thirty-eight typewritten pages. No objection was made to this testimony, on the ground that Eddy had not qualified as an expert, until after he had been thoroughly cross-examined, when defendant moved Eddy's testimony be stricken "on the ground that the witness by his own testimony has failed to qualify as an expert and therefore is not capable of testifying upon this question." Much of Eddy's testimony, when analyzed, was concerning the experiments that he had carried on and in illustrating before the jury his discoveries and observations made during that time. For instance, he took bullets from a cartridge taken from the possession of the defendant on his arrest, fired from defendant's pistol, and pointed out to the jury markings thereon corresponding to the markings on the bullets taken from the body of the deceased, and used in aid thereof a microscope which the jury was also permitted to use. He exhibited photographs he had caused to be taken of such bullets that magnified many times the markings of such bullets. He testified that he had experimented with the Spanish 32 automatic, Colt's 32, and a Savage 32, and that the markings on the bullets discharged from these weapons were unlike the markings of bullets discharged from the Mauser.

The learned trial judge took the position that it was unnecessary that the witness be qualified as an expert to testify to his experiments and the results thereof, and for the want of a better term designated such testimony as "semi-expert"; and relying upon the rule announced in *Spence* v. *Territory,* 13 Ariz. 20, 108 Pac. 227, held the witness was competent to testify. In the Spence case witnesses were permitted to give their opinions as to whether the bullets inflicting the death wounds had entered from the front or back of the head of deceased. Their qualification

consisted of their observation of wounds inflicted by bullets upon animals they had hunted and killed. The court said:

"It is contended that the witnesses were not experts, and should not have been permitted to testify. It is true that they were not experts in the sense that they were possessed of scientific or technical knowledge of the subject concerning which they expressed their opinions, but they were possessed of information that undoubtedly was useful to the jury. They did not testify as experts, but merely stated conclusions of fact derived from their observations. In *Hopt* v. *Utah,* 120 U. S. 430, 30 L. Ed. 708, 7 Sup. Ct. Rep. 614 (see, also, Rose's U. S. Notes), a witness was permitted to give his opinion as to the direction from which a blow was delivered, after he had stated that his examination of the body had enabled him to form an intelligent opinion upon that point. The court says: 'The opinions of witnesses are constantly taken as to the result of their observations on a great variety of subjects. All that is required in such cases is that the witnesses should be able to properly make the observations the result of which they give, and the confidence bestowed on their conclusions will depend upon the extent and completeness of their examination and the ability with which it is made. . . . It was a conclusion of fact which he would naturally draw from the examination of the wound. It was not expert testimony in the strict sense of the term, but a statement of a conclusion of fact such as men who use their senses constantly draw from what they see and hear in the daily concerns of life.' "

Evidence of the experiences and observations of witnesses is of frequent use in the trial of causes. It may be of an expert nature requiring special knowledge of the subject matter, or it may be such knowledge as comes to the ordinary layman. Wigmore on Evidence, vol. 1, § 555 et seq.

The qualification of witnesses called to testify concerning matters falling within their observation or ex-

perience is a question in the first instance to be passed upon by the trial court; and if a party is in doubt as to the qualification of the witness, he should examine him in that regard primarily so that the court will be advised of the knowledge of the witness and may intelligently decide the question of his competency. The question is left largely to the trial court's discretion and will not be reviewed except where it clearly appears the discretion was abused. Id. 561.

The motion to strike was directed at all of the testimony of the witness Eddy. It may be, and we are inclined to think, that some of his testimony was improper and should have been stricken. If those parts had been objected to during the examination of the witness, or by motion at the close of his examination specifically indicating them, we have no doubt the court would have refused to let the witness testify, or have stricken the testimony after it was given. No such procedure was followed. The motion to strike the testimony of Eddy as presented, if granted, would have had the effect of taking from the consideration of the jury, not only testimony that possibly should not have been admitted, but testimony which, under all the rules of evidence, should have been admitted. It was impossible for the court to grant the motion in the form in which it was presented.

In the case of *Rush* v. *French,* 1 Ariz. 99, 25 Pac. 816, which is frequently quoted by text-writers and courts, it is said:

"Counsel are held to the grounds . . . stated at the time they call for a decision of the judge below, because they are supposed to know the law of their case, and if they do not offer other objections, they are supposed to waive them, and evidence admitted without valid objection should stand."

Jones on Evidence, section 893, lays down this rule:
"Appellate courts are not organized to hear cases *de novo,* but to review the errors of the inferior courts. If a party would take advantage of the admission of improper evidence on appeal or on motion for new trial, it is necessary to make objection at the time it is offered. It is too late after the evidence is admitted to the jury or after motion in arrest of judgment."

And Wigmore on Evidence, volume 1, section 18, says:

"The initiative in excluding improper evidence is left entirely to the opponent—so far at least as concerns his right to appeal on that ground to another tribunal."

We are satisfied the court did not commit error in refusing to strike the testimony of the witness Eddy.

Defendant, testifying in his own behalf, to the question propounded by his counsel, "Were you ever convicted of a felony in the state of Oklahoma?" answered, "Yes, sir." On cross-examination the county attorney asked defendant if he was convicted of murder at Muskogee, Oklahoma, on June 27, 1916, and given a life sentence. The objection to this question, on the ground of incompetency, was overruled, and defendant answered in the affirmative. This ruling of the court is assigned as error.

The general rule, in the absence of a statute regulating the matter, when a defendant offers himself as a witness, is that it may be shown, either by the record or on cross-examination, that he has suffered previous conviction of a felony or felonies. Either method is permissible. 2 Wigmore on Evidence, § 980; *Commonwealth* v. *Walsh,* 196 Mass. 369, 124 Am. St. Rep. 559, 13 Ann. Cas. 642, and notes 643 and 644, 82 N. E. 19.

The record, which is the best evidence of a previous conviction, may always be introduced. It, of course,

would show the nature of the crime. The defendant cannot, in anticipation of the exposition of his past in that particular, by testifying to it on his direct examination, prevent the prosecution from showing the nature of the crime of which he was previously convicted. Indeed, the weight of the evidence as a factor of impeachment depends upon the character of the crime involved in the previous conviction—as, whether it involved moral turpitude or was merely *malum prohibitum*.

Other questions were asked the defendant on cross-examination pertaining to his life's history, on the theory that he having taken the stand in his own behalf was subject to the same rule in that regard as any other witness. In *West* v. *State*, 24 Ariz. 237, 208 Pac. 412, referring to section 1229 of the Penal Code, we say:

"By the statute he [defendant] is given an opportunity to testify, and if he accepts it he must submit to the same rigid cross-examination as other witnesses."

The trial court very carefully guarded the rights of the defendant upon the cross-examination and confined the prosecution to very narrow limits in the inquiry into his past life.

We have carefully examined all the assignments of error made by the defendant. There is no suggestion that the evidence does not support the verdict and judgment. The jury, of course, had no doubt of the defendant's guilt, and our reading and careful consideration of the evidence convince us that the verdict is right.

The defendant Hadley accepted the accommodation of a ride from the Johnsons, and in a lonely desert place, at an unsuspecting moment, heartlessly and cruelly snuffed out the life of Mrs. Johnson. By a miracle the husband, with four wounds in his body,

escaped to tell the tale. In many of its features the tragedy was like the one enacted by the defendant in the West case, and, according to the law of this state, should have the same finale. Before a jury of twelve men good and true, after a fair trial, defendant was found guilty and must now suffer the penalty society has decreed shall be inflicted in such cases.

The judgment of conviction is affirmed.

McALISTER, C. J., and LYMAN, J., concur.