527 P.2d 297

The STATE of Arizona, Appellee,

v.

Terry Lee PEARCE, Appellant.

No. 1 CA–CR 666.

Court of Appeals of Arizona,
Division 1,
Department A.

Oct. 22, 1974.

Rehearing Denied Nov. 27, 1974.

Review Denied Jan. 14, 1975.

N. Warner Lee, Atty. Gen., Gary K. Nelson, Former Atty. Gen., by Stanley L. Patchell, Asst. Atty. Gen., for appellee.

Ross P. Lee, Maricopa County Public Defender, by John Foreman, Deputy Public Defender, for appellant.

## OPINION

STEVENS, Judge.

Terry Lee Pearce [defendant] was convicted with each of three counts charging him with exhibiting a gun in a threatening manner, an offense under A.R.S. § 13–916.[1] This appeal followed:

Two questions are presented on this appeal:

1. Was it error to refuse to give the defendant's requested instruction which would have advised the jury that the State was required to prove a specific intent? and

2. Was it error to grant the State's motion in limine which ruling precluded the defense attorney from asking the defendant on direct examination whether he had a prior felony conviction?

We answer the first question in the negative. We answer the second question in the affirmative and hold that the trial court's ruling was not reversible error. We also hold that the ruling was not in relation to a constitutional issue and related only to an evidentiary matter. This opinion is prospective on this issue.

Count one of the information charges: "The said TERRY LEE PEARCE, on or about the 2nd day of September, 1973, and before the filing of this Information at and in the County of Maricopa, State of Arizona, not in necessary self defense, in the presence of Samuel Addison Repp, drew or exhibit a certain deadly weapon, to-wit: a gun, in a threatening manner, or in any manner unlawfully used the weapon in a fight or quarrel, all in violation of A.R.S. § 13–916, as amended 1969."

Count two is identical substituting the name of Ronald Mack Baker for Repp and count three is identical substituting the names of James K. Spratley and Mike Hobley for Repp.

We state the facts in the light to sustaining the jury verdicts of guilt.

On Sunday, 2 September 1973, the defendant, with a friend, was fishing from the bank of a cove at Lake Pleasant not far from Phoenix. Lake Pleasant is also used by people in motor powered boats. The first incident occurred as Repp and others approached the cove in Repp's boat equipped with a 327 Chevrolet inboard motor. Repp was towing a person on an inner tube. Repp heard a shot and observed the defendant on the bank with a hand gun

---

1. The material portions of A.R.S. § 13–916 are as follows:

"§ 13–916. Exhibiting a deadly weapon other than in self-defense; punishment

"A person who, not in necessary self-defense, in the presence of another, * * * exhibits any deadly weapon in a threatening manner, * * * is guilty of a crime punishable by imprisonment in the county jail for not to exceed one year or by imprisonment in the state prison for not less than one year nor more than five years."

in his hand. Speaking of the defendant, Repp testified:

"A. After that he pointed towards where—towards the boat—to get the boat out of there—the next one was going to go through the boat.

"Q. Were those the words as best you can recall?

"A. Yes, sir."

Repp then departed from the area of the cove and found Baker. [Count Two] Together in Baker's boat they located Sheriff's Deputies Spratley and Hobley [Count Three] and returned to the cove, Baker leading. The Sheriff's Deputies were in uniform and their boat was clearly marked with appropriate insignia of the Sheriff's office. As they approached the defendant fired a shot in the direction of the boats which struck the water and a second shot entered the water between the two boats.

The deputies directed the defendant to drop his gun and shortly thereafter he did. After landing the defendant was placed under arrest.

During the trial and after a voluntariness hearing the deputies testified as to statements made by the defendant. While the defendant, in his statements, denied shooting at the boats, a deputy testified that the defendant did state:

"A. He stated that he had been fishing there before, someone had cut his lines and it wasn't going to happen again."

The defendant, contrary to the advice of his attorney, took the stand and testified. He stated he had fired shots into the water seeking to kill crappies and crawdads. In relation to the first incident involving Repp and his boat, we quote the defendant's testimony as follows:

"Q. Now, what happened right after you heard someone say 'You really impress me,' and heard another voice say, 'I think we better go over there,' then what happened?

"A. I put the revolver back in my holster and I heard the person in that nasty voice say, 'We ought to go over there.'

I said, 'Well, then, the next one could be through your outboard motor and then you won't be able to go anywhere and therefore, there will be no trouble.'"

▮▮▮▮ The minutes disclose the following before the defendant took the stand.

"Terry Lee Pearce is sworn and testifies.

"The State moves in limine to preclude defense counsel from questioning the defendant regarding his prior felony conviction and the court grants the Motion in Limine."

Defense counsel honored the ruling and on cross examination we find:

"Q. * * * Isn't it true, Mr. Pearce, that you have been convicted of a felony?

"A. I have.

"Q. Yes or no?

"A. Yes.

"Q. That was burglary, was it not?

"A. Yes.

"Q. And you went to prison, did you not?

"A. Yes, I did."

As before indicated in question number 2, the defendant urges error in the ruling on the in limine motion. The State seeks to sustain the ruling relying upon Hadley v. State, 25 Ariz. 23, 212 P. 458 (1923), and Udall's Arizona Law of Evidence. In § 67 entitled "Impeachment by Misconduct —Felony Conviction", Udall, citing Hadley, supra, states:

" 'Drawing the sting.' Under the rule that one's own witness may not be impeached, it is improper for a defendant in a criminal case to 'draw the sting' and anticipate his cross-examination by stating on direct examination that he has been convicted of a felony. If the defendant nonetheless attempts by admitting 'a felony conviction' on direct, to prevent the state from showing the type of crime, place, etc., the stratagem does not alter the right or manner of the state's impeachment."

Our Supreme Court in Hadley, supra, makes the following recitation,

"Defendant, testifying in his own behalf, to the question propounded by his counsel, 'Were you ever convicted of a felony in the state of Oklahoma?' answered, 'Yes, sir.' On cross-examination the county attorney asked defendant if he was convicted of murder at Muskogee, Oklahoma, on June 27, 1916, and given a life sentence. The objection to this question, on the ground of incompetency, was overruled, and defendant answered in the affirmative. This ruling of the court is assigned as error."

and goes on to hold:

"The defendant cannot, in anticipation of the exposition of his past in that particular, be testifying to it on his direct examination, prevent the prosecution from showing the nature of the crime of which he was previously convicted. Indeed, the weight of the evidence as a factor of impeachment depends upon the character of the crime involved in the previous conviction—as, whether it involved moral turpitude or was merely *malum prohibitum*." [Emphasis theirs]

We have great respect for Udall's work on evidence and at the same time cannot agree that defense counsel are precluded from "drawing the sting." We hold that the granting of the in limine motion was error. We recognize that trial judges in Arizona have ruled both ways. We hold that the error is not of the magnitude to require a reversal of this case.[2] This holding is prospective only.

The defendant requested the following instruction.

"In the case of certain crimes, it is necessary that the criminal act be accompanied by a specific or particular intent, without which the crime is not committed.

"Thus, in the crime of exhibiting a deadly weapon not in self-defense, a neces-sary fact to be proved is the existence in the mind of the defendant of the specific intent to threaten, and unless such intent to threaten so exists, that crime is not committed."

The trial court gave the standard instruction on intent which embodies A.R.S. § 13–131 and declined to give the above-quoted instruction. Under the language of the statute we find no error.

In discussing general intent and specific intent our Supreme Court stated in State v. Jamison, 110 Ariz. 245, 517 P.2d 1241 (1974):

"There are two types of intent in criminal law, general and specific. In crimes of general intent, the party is presumed to have the requisite criminal intent from the commission of the crime itself. Specific intent, however, is an additional mental element to certain crimes, and criminal statutes that use the words 'Wilfully' or 'intentionally' will usually require a specified intent as, for example, assault with intent to commit murder which requires a specific intent on the part of the defendant to commit a murder, in addition to a general intent to commit an assault.

"The difference between general and specific intent is important in a case like the one before the court because of the different burden placed on both the State and the defense. In general intent cases, once the commission of the crime has been shown, the absence of general intent may be shown by the defendant, * * *.

"On the other hand, in crimes of specific intent, this specific intent must be proved by the State * * *.

* * *

"General criminal intent is implied from the act itself while specific intent is not."

The purpose of the statute is to make punishable acts which endanger or are likely to endanger other persons without any spe-

---

2. See State v. Jackson, 109 Ariz. 559, 514 P.2d 480 (1973), for a statement relative to harmless error.

**342**

cific intent to do so. It is noted that the statute is an open end statute, thus, making available penalties which are suitable to the circumstances. The statute in question does not require that the prohibited act be done wilfully or intentionally.

We have reviewed the entire record and find no reversible error. We are not called upon to review the matter of sentence as the defendant was placed on probation. The judgments of guilt which followed the verdicts of guilt are affirmed.

DONOFRIO, P. J., and OGG, J., concur.