571 P.2d 268

**The STATE of Arizona, Appellee,**

v.

**Roger Paul FLEMING, Appellant.**

**No. 3894.**

Supreme Court of Arizona,
In Banc.

Nov. 1, 1977.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, and Galen H. Wilkes, Asst. Attys. Gen., Phoenix, for appellee.

Bruce A. Barton, Phoenix, for appellant.

CAMERON, Chief Justice.

Defendant, Roger Fleming, was found guilty by a jury of the crime of possession of stolen property. A.R.S. § 13–621. He was adjudged guilty and placed on three years probation. A.R.S. § 13–1645. He appealed from the judgment and we took jurisdiction pursuant to Rule 47(e)(5), Rules of the Supreme Court, 17A A.R.S.

We must answer the following questions:

1. Was there undue restriction of the defendant's right of confrontation by not allowing the defendant to inquire into the prior mental history of the prosecution's key witness, Joseph Clark?

2. Should the prosecution have been prevented from raising Clark's criminal record on direct examination?

3. Was a comment about the criminal activities of defendant's father erroneously admitted?

4. Was there an improper comment upon an exercise of the right to remain silent?

5. Was the jury misled by the instructions on the elements of the crime of possessing stolen property?

6. Do all the asserted errors, when taken together, indicate that defendant was denied a fair trial?

7. Should this court order a new trial based upon evidence obtained after the judgment and sentence?

The facts necessary for a determination of this matter are as follows. In early December 1975, Joseph Clark called defendant at his father's service station where defendant was working. Defendant's father had purchased other stolen property from Clark, and Clark had learned defendant was interested in purchasing a truck. A bargain was reached during the conversation and Clark brought the truck and camper to the service station.

The defendant purchased a pickup truck and camper top from Clark for $1,250. Clark had stolen the truck from the lot of Earnhart Ford in Chandler. The camper had been stolen with another truck from

the parking lot of a bar in east Phoenix. Before selling the truck and camper to the defendant, Clark had sanded and repainted the camper. The truck was provided with a new serial number obtained from a salvage vehicle purchased by Clark which he used to transfer what appeared to be good title.

Defendant testified at the trial that he did not become "suspicious" about the camper and truck until after a visit made by Clark and John Heit, an accomplice in the car theft ring, to the service station. The truck and camper were parked at the side of the station so the defendant could work on repainting the camper. At the time of the visit, the places where the decals had been were exposed. There was some dispute about what precisely was said, but Heit did suggest to the defendant that he should move the vehicle to a spot in back of the station. Defendant contended that nothing was said at that time which directly indicated that the vehicle was stolen, and that it was only later that he became concerned that there might be something wrong. He testified that he took the camper to his residence and decided to wait and see if good title came back from the State.

Approximately a week later, the police visited defendant in connection with their investigation of Clark's theft ring. They read defendant his *Miranda* rights and asked him if he had known that the truck and camper had been stolen. Defendant stated that since the title had come back from the State on the truck, he had assumed it was all right but that he had had his suspicions about the camper. He was charged with possession of stolen property in regard to the camper. He was tried and convicted in Maricopa County Superior Court.

### DEFENDANT'S RIGHT OF CONFRONTATION

■ According to the prosecutor, a key State witness, Joseph Clark, was involved in a barroom brawl about four years before this trial which led to his conviction of a high misdemeanor. The event occurred in New York. At the time, Clark had alleged-

ly been depressed over the death of his mother and was intoxicated at the time of the incident. The New York court, as a condition of probation, ordered that Clark enter a mental hospital for diagnosis and treatment if indicated. The defendant entered the hospital but left without signing out after two days because he did not receive any evaluation or treatment. Clark went from the state hospital to the Veteran's Hospital where a one-day psychiatric evaluation was made. While the prosecutor admitted that the witness might be listed as an escapee from the New York hospital, he avowed that there was no warrant or request from New York requesting extradition.

After a hearing on the State's motion in limine, the court took the matter under advisement and later granted the motion. Counsel only argued orally on the motion in limine; Clark was not called to be examined by the State on the factual matters alleged by the State in the motion.

Defendant contends that the trial court unduly restricted his right to confront and cross-examine the witnesses against him when the court granted the State's motion precluding inquiry about Joseph Clark's brief stay in a mental hospital in 1972. We do not agree.

■ The right of cross-examination is a vital part of the right of confrontation conferred by the Sixth Amendment. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The right does not confer, however, a license to run at large in cross-examination. The right to cross-examination must be kept within "reasonable" bounds and the trial court has discretion to curtail its scope. Distinctions between reasonable limitations on the scope of cross-examination and unnecessary restrictions on the right to confront witnesses are, however, difficult to draw and must be considered on a case-by-case basis. The test is whether the defendant has been denied the opportunity of presenting to the trier of fact information which bears either on the issues in the case or on the credibility of the witness. As evidence of the witness' condi-

tion becomes more remote in time, it has proportionately less bearing on the credibility of the witness.

In the instant case, without some indication that Clark continued to have mental problems, we do not see that a two-day stay in an institution at least three years prior to the transaction with the defendant and approximately four years prior to trial, would have any bearing on Clark's credibility at the trial.

■ Defendant also claims that his right to confrontation includes cross-examination of Clark out of the presence of the jury in order to determine whether any connection could be made between his earlier problems and his credibility.

Ordinarily a hearing outside the presence of the jury at which time the witness Clark could be examined on this point would be indicated. The record before us, however, does not show that the defendant asked for such a hearing. Absent a request for a hearing and a showing by the defendant that the cross-examination of Clark would reveal something with a direct bearing on the credibility of his testimony, we do not find any abuse of discretion by the trial court in granting the State's motion.

### DRAWING THE STING

■ Defendant contends that the State should have been barred from raising Clark's prior felony conviction in direct examination. The gist of his argument is that by raising the question of prior convictions on direct, the State foreclosed a more effective attack on Clark's credibility by the defense on cross-examination. He argues that this cut him off completely from a legitimate area of cross-examination thereby violating his right of confrontation. We do not agree.

■ Arizona has followed the general rule that a person may not impeach his own witnesses absent exceptions to the rule such as surprise or hostility (but see Rule 607, Arizona Rules of Evidence, effective 1 September 1977). Some writers have extended the rule against impeachment of one's own

witness to the "drawing of the sting" of prior felony convictions; that is, to ask the witness on direct if he has a prior felony conviction thereby lessening the impact of the prior felony upon the jury when asked on cross-examination. We believe the prohibition against drawing the sting has been honored more in the breach than in the observance. Where we have found examples of drawing the sting, no prejudice has been found and cross-examination has not been limited on the same point. *Hadley v. State*, 25 Ariz. 23, 212 P. 458 (1923). We agree with the observation of the Court of Appeals in a case wherein the State had obtained an order prohibiting the defense from "drawing the sting":

"We * * * cannot agree that defense counsel are precluded from 'drawing the sting.' We hold that the granting of the in limine motion was error. We recognize that trial judges in Arizona have ruled both ways. * * *." *State v. Pearce*, 22 Ariz.App. 338, 341, 527 P.2d 297, 300 (1974).

■ We hold that as an exception to the general rule against impeachment of one's own witness, the State or the defendant may call a witness with a prior felony conviction and "draw the sting" by asking the witness on direct examination about the prior felony conviction.

This does not foreclose any inquiry into the matter on cross-examination. The other party may still inquire into the convictions on cross-examination and bring out details within evidentiary limits.

We find no error.

### PRIOR DEALINGS OF DEFENDANT'S FATHER

■ During direct examination of the witness Clark by the State, the following transpired:

"Q How did it come about that Roger Fleming became your customer for the truck and camper?

"A Well, I sold his father a lot of stolen stuff and a motor home and four-wheel-drive International and I nev-

er really talked to Roger before about it.

"MR. BARTON: I would move to strike the preceding testimony. I has no variance on this individual, and its prejudicial.

"MR. BECKSTEAD: Your Honor, if Mr. Clark could be allowed to complete it I believe he could connect it up and it would be a part of the whole story.

"THE COURT: It's already out at this time. There was no objection to the question at the time. At this point, Mr. Barton, I think that I will allow him to complete his testimony with regard to it and I will let you make a motion as to those portions that you wish to have stricken because I think we have kind of split it down the middle and let's see where we are on it.

"Q MR. BECKSTEAD: You stated you contacted Roger's father. What's his name?

"A John Fleming.

"Q How did Roger become a customer as opposed to John Fleming?

"A Roger worked with his father at the gas station and John Height is the one that told me that Roger was interested in a truck and a camper in the first place."

Defendant contends that the information about defendant's father is inadmissible as having no relativity to defendant's innocence or guilt and is, in fact, prejudicial as the jury is likely to believe "like father, like son." We do not agree. From all the testimony, we believe the information was a part of the complete story of the transaction and is therefore admissible. We find no error.

## COMMENT ON DEFENDANT'S SILENCE

■ At trial, defendant claimed that he had had no idea that the truck and camper had been stolen and only became suspicious after Heit had come by the station and told him to move the camper. His response was to move the truck to the driveway of his residence and wait for the title to come back from the State. On cross-examination, the prosecution asked if the defendant had taken any affirmative steps at that time to determine whether the camper had in fact been stolen. The defendant responded that he had made no inquiries either of the police or Clark. In the final argument, the prosecution urged that the evidence indicated that the defendant had reason to know that the truck and camper had been stolen and emphasized that he had done nothing but make sure he had good title from the State to protect the "good deal he had made" in purchasing transportation for himself. Defendant contends that these comments and questions constituted improper comment upon an exercise of the right to remain silent. We disagree.

We have previously held that a violation of the Fifth Amendment privilege, specifically a comment upon the exercise of the right to remain silent, will be fundamental error. *State v. Shing*, 109 Ariz. 361, 509 P.2d 698 (1973); *State v. Rhodes*, 110 Ariz. 237, 517 P.2d 507 (1973); *State v. Smith*, 101 Ariz. 407, 420 P.2d 278 (1966). And the United States Supreme Court has held that prosecution comment on the exercise of the right to remain silent violates the privilege. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). These cases protect the assertion of the right in situations where an individual has become the focus of an investigation and declines to answer the questions put by officers, particularly after the defendant has been informed of his right to remain silent or when the accused exercises his right not to take the stand.

■ These cases do not apply to the instant case. The defendant's actions in failing to contact the police after he had reason to suspect that the camper was stolen were in no way protected by the Fifth Amendment or the cases interpreting it. Defendant's right to remain silent was not involved; the prosecution's questions and

comments to the jury concerning defendant's silence on the failure to act were proper. We find no error.

## INSTRUCTIONS ON POSSESSION OF STOLEN PROPERTY

Defendant's next claim is that the instructions given by the trial court were misleading and would permit a jury to convict on the basis of legal rather than illegal conduct. In particular he contends the instructions do not indicate to the jury the knowledge and the specific intent required for a violation of the statute.

A.R.S. § 13–621 reads:

"A. A person who, for his own gain, or to prevent the owner from again possessing the property, buys, sells, *possesses*, conceals or receives personal property, knowing or having reason to believe that the property is stolen, is guilty * * ." (Emphasis supplied)

Defendant cites the following instruction as an incomplete if not incorrect statement of the law:

"One of the elements of this crime is possessing or receiving stolen property while knowing or having reason to believe the property is stolen. This knowledge or reason to believe that the property was stolen may be acquired at the time of the original receipt of the property or at a later date while the person receiving it still had possession and control of the property.

"Another of the elements of the crime of possessing stolen property * * * is that a defendant must possess the stolen property for his own gain, or to prevent the owner from again possessing the property. You are instructed that 'gain' mentioned in the previous instructions need not be monetary. Any benefit or advantage, direct or indirectly, from the possession of the goods by the defendant is enough gain to satisfy this element of the crime—that, being possession for the defendant's own gain."

Defendant contends:

"Under the above instruction, the jury could find that if a person became aware that the property was stolen and then sought to find the owner thereof, yet at the same time used the property, or had the property in a place where it could be utilized, then such a person would be in derogation of the statute."

Instructions, however, are read together, *State v. Richardson*, 110 Ariz. 48, 514 P.2d 1236 (1973), cert. den. 415 U.S. 929, 94 S.Ct. 1439, 39 L.Ed.2d 487 (1974), and defendant ignored the instruction immediately preceding the instruction.cited:

"The defendant has been charged with the crime of possessing stolen property. The crime of possessing stolen property has three elements: One, the property possessed by the defendant must be stolen; and, Two, the defendant must know, or have reason to believe, the property possessed is stolen; and, Three, at the time of this knowledge the defendant must possess the property for his own gain or with the intent to prevent the rightful owner from again possessing it."

We believe the trial court clearly advised the jury that they had to find that both knowledge and specific intent were present before they could convict. When viewed in the context of the instructions which clearly delineate the different elements of the crime and viewed in light of the other instructions, we cannot say that the jury was misled by these instructions. We find no error.

## FAIR TRIAL

Defendant contends that all other arguments when taken together demonstrate that he did not receive a fair trial. Since we have found that there was no error in any of the claims presented, we cannot say that any prejudice suffered by the defendant indicates that he did not receive a fair hearing. We find no error.

## ORDER OF A NEW TRIAL ON APPEAL

Defendant next contends that there is new evidence which would justify a new trial. He claims that the sentence received by Joseph Clark (probation) indicates that a "deal" was made with Clark providing him with a lighter sentence in

exchange for his testimony. Since the defendant was entitled to be advised of any deals between the prosecution and its key witness, he contends that this entitles him to a new trial.

Without going into the merits of defendant's claim, we note defendant has an adequate remedy in a proceeding under Rule 32, Rules of Criminal Procedure (1975), 17 A.R.S. Defendant may, pursuant to Rule 32.1(e), raise this issue, have the matter heard, and a factual determination made of his allegations. A determination of the matter on appeal based upon the evidence adduced at trial does not prevent a Rule 32 motion based upon newly discovered evidence. *State v. Moncayo*, 115 Ariz. 274, 564 P.2d 1241 (1977).

Judgment and sentence affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN, and GORDON, JJ., concur.