**Herbert Herman FEIST, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 09 81 033 CR.**

Court of Appeals of Texas, Beaumont.

Feb. 17, 1982.

Rehearing Denied March 17, 1982.

Harold J. Laine, Jr., Beaumont, for appellant.

John R. DeWitt, Asst. Crim. Dist. Atty., Beaumont, for appellee.

OPINION

KEITH, Justice.

Appellant was indicted for aggravated robbery and the indictment contained one

enhancement paragraph. He pleaded not guilty but was found to be guilty and the jury assessed his punishment at confinement for forty years.

While the appellant does not challenge the sufficiency of the evidence to support the conviction, a brief review will serve to put the entire case in proper perspective.

Mary Lee Coward and Delores LaFedge were clerks in a convenience store in Beaumont known as the International Drive-Inn on Sabine Pass Avenue. Shortly before eleven p. m., as they were preparing to close the store, appellant entered asking for a package of cigarettes. He tendered the precise change, 85 cents, and as Coward rang up the purchase on the cash register, appellant produced a pistol and demanded the money from the register. He was given the money from the register, some two hundred dollars, and left the store.

Both clerks testified that they were in fear of death or serious injury. Each identified appellant as the robber and were corroborated by Willie LaFedge, husband of Delores, who was present at the time to escort his wife home when the store closed.

None of the persons in the store at the time of the robbery were able to identify appellant from mug shots at the police station on the night of the robbery. But, a few weeks later, Coward saw appellant on the street and reported such fact to the police detectives. A review of additional mug shots by Coward and the two LaFedges at that time resulted in their identification of appellant as the robber. Although cross-examined rigorously, each remained firm in the identification of appellant.

Appellant testified in his own behalf, as will be noted later, and denied the robbery. His mother, his only other witness, did not raise the issue of an alibi defense. No other factual defense was interposed. Appellant pleaded "true" to the enhancement paragraph of the indictment.

Before the start of the trial, State's counsel filed a lengthy motion in limine which, inter alia, prohibited defendant or his counsel from making mention "of whether or not the Defendant has any previous convictions for a felony or crime of moral turpitude prior to the punishment stage for the reason that such evidence during the guilt or innocence stage is only relevant as impeachment evidence."

Appellant testified in his own behalf, making an unconditional denial of any participation in the robbery, and obeyed the strictures placed upon him by the motion in limine. After a brief series of questions by State's counsel on cross-examination, there was an unrecorded bench conference, after which State's counsel proved, upon cross-examination of appellant, that he had twice been convicted of felonies before the date of the incident then upon trial.

After a second unrecorded bench conference, appellant's counsel was permitted to ask appellant a single question:

"Q. Has it ever been your desire to try to hide your prior record from this jury?

"A. No, sir."

In the absence of the jury, it was shown that appellant's counsel had sought relief from the motion in limine before appellant left the stand, apparently at the first conference, but relief was denied.

Upon the motion to declare a mistrial, appellant contended:

"The Defendant would further show that counsel for the Defendant did the best he could to convince the Court that manifest justice and fair play required that the Defendant not be put in a position where he could be forced to remain silent as to his prior criminal record in the presence of the jury by the State's efforts and then be required to testify as to his prior criminal record on cross-examination under circumstances which of necessity has to appear to be a revelation brought about for the benefit of the jury only by the astute cross-examination of the imminent State's Counsel."

The motion argued that State's counsel sought to "ambush the defendant and to chill his right to take the stand in his own defense" by forcing the defendant to "make

a choice of whether to waive his inherent right to testify in his own behalf or do so, exercise that right, upon the pain and penalty of the State being allowed to make him look like he had tried to hide information from them."

■ A person accused of a crime in Texas has a fundamental constitutional right of being heard in his own defense, *Art. I, § 10, Constitution of Texas,* and such "is a right of which an accused can under no circumstances be deprived." *Carlile v. State,* 451 S.W.2d 511, 512 (Tex.Cr.App.1970), *Anselin v. State,* 72 Tex.Cr.R. 17, 160 S.W. 713, 714 (1913).

One limitation to the broad rule was articulated in *Leahy v. State,* 111 Tex.Cr.R. 570, 13 S.W.2d 874, 881 (1928):

"The right to be heard means only a privilege granted and to be exercised within the law in a proper and legitimate manner."

See also, *Hathorne v. State,* 459 S.W.2d 826, 834 (Tex.Cr.App.1970).

■ The only reason advanced by the State for the prohibition on the introduction of testimony concerning prior convictions was that such evidence "is only relevant as impeachment evidence." In the context in which the question is presented, we disagree with the base for the order. Every lawyer for an accused strives to clothe his client with an air of credibility, one criteria being complete candor. Knowing that his client is subject to cross-examination as to prior convictions,[1] the witness is in a much better position before the jury if the blight on his character is shown on direct examination.

We are of the opinion that the trial court erred in not permitting appellant to disclose to the jury—at the outset of his direct examination—the fact that he had been convicted of a felony and had been imprisoned therefor. The action of the trial court in sustaining the motion in limine deprived appellant of his right to employ the maneuver sometimes known as "drawing the sting."[2] It has been said:

"It is not impeachment of one's own witness; on the contrary it is an anticipatory disclosure designed to reduce the prejudicial effect of the evidence on the witness' credibility. The evidence is admissible on the ground that 'The proponent of a witness need not allow such information damaging to his credibility to be first established on cross-examination * * *.' *United States v. Mahler* (2nd Cir. 1966), 363 F.2d 673, 678." *People v. DeHoyos,* 64 Ill.2d 128, 355 N.E.2d 19, 21 (1976).

When such a disclosure is not permitted, the jury may well believe that the party calling the witness was concealing evidence adverse to the witness' credibility. *State v. Estlick,* 269 Or. 75, 523 P.2d 1029, 1031 (1974). The maneuver has been termed merely a part of the "legitimate thrust and riposte of trial tactics." *Commonwealth v. Garrison,* 398 Pa. 47, 157 A.2d 75, 77 (1959). The accused—as well as the prosecution—is entitled to elicit the information concerning the prior convictions "simply to divest the jury of the mistaken impression that [the party tendering the witness] is keeping something from it." *State v. Ciulla,* 115 R.I. 558, 351 A.2d 580, 586 (1976).

We deny the opposite party, in this instance the State, the claim to a right to bring out the damaging facts for the first time in a more dramatic way on cross-examination. See *Commonwealth v. Coviello,* 7 Mass.App. 21, 384 N.E.2d 1265, 1267 (1979), aff'd, 378 Mass. 530, 392 N.E.2d 1042 (1979). See also, *Commonwealth v. Cadwell,* 374 Mass. 308, 372 N.E.2d 246, 249 (1978).

---

1. *Nichols v. State,* 494 S.W.2d 830, 834 (Tex.Cr. App.1973). See generally, *Randolph v. State,* 499 S.W.2d 311, 313 (Tex.Cr.App.1973).

2. *State v. Fleming,* 117 Ariz. 122, 571 P.2d 268, 272 (1977):

"Some writers have extended the rule against impeachment of one's own witness to the 'drawing of the sting' of prior felony convic-

tions; that is, to ask the witness on direct if he has a prior felony conviction thereby lessening the impact of the prior felony upon the jury when asked on cross-examination."

*Fleming* authorized the use of the maneuver. See also, *State v. Pearce,* 22 Ariz.App. 338, 527 P.2d 297, 300 (1974).

Having found error in the record, we now turn to a consideration of its effect upon the judgment of conviction, i.e., whether or not reversible error is presented. The general rule is that a judgment will not be reversed because of a trial error which did not injure the defendant; rather, the question is whether there is a reasonable possibility that the incident complained of might have contributed to the conviction or the punishment assessed by the jury. *4 Teague, Texas Crim. Practice, § 90.06[2][e]*; cf. *Clemons v. State*, 605 S.W.2d 567, 571 (Tex. Cr.App.1980).

From our review of the entire record, we are of the opinion that the denial of appellant's right to prove his prior conviction to favorably influence the jury's consideration of his credibility did not amount to reversible error. Three witnesses were positive in their identification of him as the robber and his own testimony denying commission of the robbery did no more than create a fact issue. Even if appellant had established an unblemished record as an outstanding law-abiding citizen, the jury would likely have encountered difficulty in reaching a verdict of acquittal.

There being no reversible error in the record, the judgment of the trial court is AFFIRMED.