NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

EVERARDO PONCE RODRIGUEZ, *Appellant.*

No. 1 CA-CR 17-0158
FILED 7-26-18

Appeal from the Superior Court in Maricopa County
No.  CR2016-101981-001
The Honorable Erin Otis, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Gracynthia Claw
*Counsel for Appellee*

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

### MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Lawrence F. Winthrop joined.

**C A T T A N I**, Judge:

**¶1**         Everado Ponce Rodriguez appeals his convictions for aggravated assault and preventing the use of a telephone during an emergency.  For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**         In January 2016, the victim (Rodriguez's girlfriend) called 9-1-1 to report that Rodriguez had threatened her with a knife.  The victim told police officers and a forensic nurse examiner that Rodriguez held a knife against her throat, then threw her on a bed and choked her until she fainted.

**¶3**         The State charged Rodriguez with criminal damage, preventing the use of a telephone in an emergency, and two counts of aggravated assault.  Following a jury trial, Rodriguez was convicted of preventing the use of a telephone in an emergency, and of one count of aggravated assault.  He was sentenced to concurrent terms of probation for the two convictions.  He timely appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 13-4033(A).

### DISCUSSION

**¶4**         Rodriguez argues that the superior court improperly precluded him from presenting evidence of the victim's immigration status. He asserts error under the Due Process and Confrontation Clauses of the United States Constitution, arguing that the court unreasonably limited his ability to cross-examine the victim regarding her "motive and hope for reward for her coming to court and testifying."

**¶5**         We review the superior court's ruling on the admissibility of evidence for an abuse of discretion, but we review de novo constitutional challenges to the admissibility of evidence. *State v. Bennett*, 216 Ariz. 15, 17, ¶ 4 (App. 2007).  The superior court retains broad discretion to impose reasonable limits on cross-examination to, *inter alia*, prevent confusion of

the issues, unfair prejudice, misleading the jury, or interrogation that is only marginally relevant. *See Davis v. Alaska*, 415 U.S. 308, 315 (1974); *State v. Cañez*, 202 Ariz. 133, 153, ¶ 62 (2002), *superseded by rule on other grounds as stated in State v. Valenzuela*, 239 Ariz. 299, 303, ¶ 11, n.1 (2016); *State v. Fleming*, 117 Ariz. 122, 125 (1977) ("The right [of confrontation] does not confer . . . a license to run at large in cross-examination."); *State v. Buccheri-Bianca*, 233 Ariz. 324, 328, ¶ 8 (App. 2013); *State v. Abdi*, 226 Ariz. 361, 367, ¶ 27 (App. 2011).

¶6        Before trial, Rodriguez filed a discovery request seeking information about the victim's immigration status—specifically whether she was a legal immigrant—and whether she had sought a U-Visa,[1] arguing that this information would show the victim's motive, bias, or interest.

¶7        On the first day of trial, the court considered evidence and argument regarding Rodriguez's discovery request. The State avowed that it had not provided the victim with a U-Visa application and that, based on information it had received from the Glendale Police Department (the arresting agency) and the United States Immigration and Customs Enforcement Unit ("ICE"), there were no prior or pending U-Visa applications submitted by or on behalf of the victim. Rodriguez's counsel in turn asserted that the victim had been in the country illegally, and that after the case began and the charges were filed, the victim had been able to work and had obtained an Arizona state identification card.

¶8        The superior court directed the State to ask the victim about her immigration status and how she was able to obtain a state identification card and work authorization. The next day, the court conducted an informal discussion off the record and noted that the victim had obtained a work visa four months after the crime and an Arizona identification card a month later. The court further noted that ICE had not confirmed whether the victim had received a U-Visa, and that the victim had received help obtaining the identification card and work documentation from a private entity not associated with the State. The State accordingly argued that the victim's immigration status should be precluded because there was not a good-faith basis either to believe the victim had obtained a U-Visa or that the State had helped her in trying to obtain one, or that the victim had otherwise received assistance as a result of Rodriguez's prosecution.

---

[1]        A U-Visa is a nonimmigrant visa that may be issued to a foreign citizen who, *inter alia*, is a victim of, and aids in the prosecution of, certain crimes. 8 U.S.C. § 1101(U)(i).

**¶9**         The superior court denied Rodriguez's discovery request and precluded information about the victim's immigration status, finding it irrelevant because there was no indication that the State had assisted or intended to assist the victim with her immigration status.

**¶10**         At trial, the victim backtracked from her previous statements to law enforcement.  She testified that she thought Rodriguez was "playing" with her at the time of the incident, even when he was squeezing her neck, and she indicated that she no longer wanted Rodriguez to be prosecuted.  The victim asserted that she did not recall details of what had happened or the statements she had made to the detective and the forensic nurse, but after being confronted with reports of her conversations with them, she acknowledged her previous statements detailing the assault.

**¶11**         During cross-examination, when the victim was asked why she came to court, she stated, "Because I was trying to fix my status and I didn't want to have any problems with . . . [the police].  They told me I couldn't have any warrants or anything like that because I was trying to legalize my status and that would harm me."  The State asked the court to strike the last portion of her statement from the record, and the court agreed to do so.

**¶12**         The constitutional rights of due process and confrontation guarantee a criminal defendant a "meaningful opportunity to present a complete defense."  *Abdi*, 226 Ariz. at 367, ¶ 27 (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).  Vital to these rights is the right to cross-examine witnesses regarding their motive and bias and to test the "believability of a witness and the truth of his testimony."  *Davis*, 415 U.S. at 315–18.  These rights are not violated, however, where "evidence has been properly excluded."  *See State v. Davis*, 205 Ariz. 174, 179, ¶ 33 (App. 2002); *see also Buccheri-Bianca*, 233 Ariz. at 328, ¶ 11; *State v. Oliver*, 158 Ariz. 22, 30 (1988).

**¶13**         Here, the victim's immigration status prior to the crime—including whether she had applied for a visa—was unknown, and there was no evidence that the State had assisted her in obtaining a visa, or that such a visa was promised in exchange for an agreement to testify against Rodriguez.  Without more, the victim's immigration status was collateral and irrelevant.  *See Buccheri-Bianca*, 233 Ariz. at 327–28, ¶¶ 7–11 (holding that evidence of a victim obtaining a U-Visa was properly excluded as collateral because the State had not assisted her in obtaining the U-Visa).

**¶14**         Rodriguez asserts that the victim's testimony regarding why she responded to the subpoena to testify—in which she stated that she

appeared only because not responding might adversely affect her legal status—demonstrated her bias and motive to testify. But fear of a particular consequence for ignoring a subpoena is not unusual regardless of the victim's immigration status. Without connecting the victim's immigration status to the motivation for or the substance of her testimony, the victim's immigration status was irrelevant. *See Abdi*, 226 Ariz. at 366–67, ¶¶ 22–25. Because there is no evidence the State provided assistance in obtaining a U-Visa for the victim in exchange for her testimony against Rodriguez, the victim's immigration status was collateral to the issues before the jury, and the superior court properly limited evidence of her immigration status. *See Buccheri-Bianca*, 233 Ariz. at 327–28, ¶¶ 7–11; *see also Abdi*, 226 Ariz. at 366–67, ¶¶ 22–25.

**¶15**        Furthermore, the nature of the victim's testimony belied any suggestion that she had agreed to testify in any particular way in exchange for assistance from the State. In fact, notwithstanding her initial statements to police describing the crime, the victim testified that Rodriguez had not assaulted her and that she opposed prosecution. When confronted with her prior statements, she equivocated regarding whether Rodriguez had threatened her and whether he was holding a knife during the incident. Accordingly, for cross-examination purposes, evidence of the victim's immigration status was, at best, only relevant to establish why she agreed to appear at trial, but was not significant for purposes of "confronting" the substance of her trial testimony. And for the same reason, even if the victim had in fact pursued a U-Visa (unbeknownst to the prosecutor), to the extent evidence of the U-Visa should have been admitted in evidence, any resulting error from its omission would have been harmless. Accordingly, Rodriguez has not established reversible error.

## CONCLUSION

**¶16**        For the forgoing reasons, we affirm.

