ECKERSTROM, Chief Judge:
¶ 1 Alleging numerous errors, Wendy Todd appeals from her convictions and sentences for six counts stemming from an incident in which she fired a gun at a home. For the reasons that follow, we affirm.
Factual and Procedural History
¶ 2 "We view the facts in the light most favorable to sustaining the convictions." State v. Robles , 213 Ariz. 268, ¶ 2, 141 P.3d 748 (App. 2006). In December 2013, Todd became estranged from her friend, F.O., following a dispute over a "dolly and pickaxe" she had loaned him. In January 2014, F.O. telephoned Todd and asked her to come to his home to talk. During the visit, the two struggled over a gun that Todd had brought with her and, at another point, Todd broke the glass door on F.O.'s microwave by punching it. F.O. asked Todd to leave, and less than one minute after she left, a bullet penetrated his wall, shattering the glass of a picture frame. When deputies reviewed video footage captured by surveillance cameras that F.O. had installed on his property, they saw Todd had fired two shots as she rode by on a motorcycle.
¶ 3 After leaving F.O.'s house, Todd went to the home of another friend, M.O., where deputies found and arrested her. During the arrest, Todd became argumentative, began hitting the partition and window of a patrol vehicle, and spit in a deputy sheriff's face. Upon release after her arrest, Todd admitted to M.O. that she had fired a gun in the air as she drove by F.O.'s house.
¶ 4 Following trial, the jury found Todd guilty of two counts each of knowingly discharging a firearm at a residential structure, intentionally discharging a firearm from a motor vehicle at an occupied structure, and aggravated assault.[1] The trial court sentenced Todd to a combination of consecutive and concurrent prison terms totaling 35.25 years. Todd appealed; we have jurisdiction. See A.R.S. §§ 13-4031, 13-4033(A)(1).
Impeachment Evidence
¶ 5 Todd first complains the trial court erred by precluding certain impeachment evidence, arguing the credibility of F.O. and M.O. was central to the case. Specifically, *1151 she complains the court should have allowed evidence of M.O.'s "15-year-old conviction," should not have sanitized F.O.'s convictions, and should have allowed evidence of pending and potential charges against both men. We review a trial court's evidentiary rulings for an abuse of discretion, State v. Uriarte , 194 Ariz. 275, ¶ 21, 981 P.2d 575 (App. 1998), including the admissibility of prior convictions, State v. Beasley , 205 Ariz. 334, ¶ 19, 70 P.3d 463 (App. 2003).
Fifteen-Year-Old Conviction
¶ 6 Todd argues the trial court should have allowed her to impeach M.O.'s testimony with evidence of his then-fifteen-year-old conviction for trafficking methamphetamine. Rule 609(a), Ariz. R. Evid., permits litigants to attack a witness's character for truthfulness with evidence of a criminal conviction. However, "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later," admissibility is more narrowly restricted. Ariz. R. Evid. 609(b). Such evidence is admissible only if its probative value "substantially outweighs its prejudicial effect," admission is "supported by specific facts and circumstances," and the proponent gives the adverse party reasonable written notice. Id. These requirements are "consistent with the notion that a criminal conviction's probative value regarding a witness' credibility declines as it becomes more remote in time." Joseph M. Livermore et al., Arizona Law of Evidence § 609:2, at 359 (4th ed. 2008). Consequently, " Rule 609(b) permits the admission of remote prior convictions 'very rarely and only in exceptional circumstances.' " State v. Green , 200 Ariz. 496, ¶ 20, 29 P.3d 271 (2001), quoting S. Rep. No. 93-1277, at 15.
¶ 7 Here, evidence of M.O.'s fifteen-year-old conviction does not meet the elevated requirements of Rule 609(b). First, the offense was of low probative value because it occurred over ten years before M.O. testified and the record does not contain specific facts or circumstances indicating the probative value of that conviction substantially outweighs its prejudicial effect. See Ariz. R. Evid. 609(b)(1) ; Green , 200 Ariz. 496, ¶¶ 8-9, 29 P.3d 271. Also, the record does not indicate Todd served the state with written notice of her intent to impeach M.O. with that conviction as required.
¶ 8 On appeal, Todd maintains the trial court abused its discretion because it did not conduct the balancing required by Rule 609(b) and did not set forth on the record the reasons for its ruling. Although the court did not explicitly balance the probative and prejudicial value of the prior conviction, it is apparent that the court considered the age of the offense and whether it was particularly probative of M.O.'s character for untruthfulness. Given the apparently low probative value of M.O.'s fifteen-year-old conviction and the reasonable risk of wasting time and confusing the issues, we cannot say the court abused its discretion by precluding Todd from this line of inquiry. See Green , 200 Ariz. 496, ¶¶ 7-9, 29 P.3d 271.
Sanitized Conviction
¶ 9 Todd next complains the trial court erred in sanitizing F.O.'s prior felony convictions. Whether to sanitize a witness's prior conviction is within a trial court's sound discretion, and "[o]ur case law has consistently approved of sanitization as a means of limiting prejudicial effect." State v. Montano , 204 Ariz. 413, ¶ 66, 65 P.3d 61 (2003).
¶ 10 Relying on the trial court's statements that receiving stolen property is a crime involving moral turpitude-and therefore, apparently one involving dishonesty-Todd insists she should have been allowed to question F.O. about the offense. But even assuming arguendo that a court is barred from sanitizing prior convictions that involve dishonesty, receiving stolen property is not such an offense. See A.R.S. § 13-1802(A)(5) ; State v. Malloy , 131 Ariz. 125, 127, 639 P.2d 315, 317 (1981) ("the phrase 'dishonesty or false statement' should be construed narrowly to include only those crimes involving some element of deceit, untruthfulness, or falsification," and not crimes such as theft or robbery); see also State v. Winegardner , 243 Ariz. 482, ¶ 17, 413 P.3d 683 (2018). Because F.O.'s prior convictions did not involve dishonesty or false statements and because-as Todd acknowledges-F.O.'s prior felony history "was discussed at length at trial," we *1152 cannot say the court erred by sanitizing his convictions. See Malloy , 131 Ariz. at 127, 639 P.2d at 317.
Pending and Potential Criminal Charges
¶ 11 Todd also argues the trial court erred by precluding her from impeaching F.O. and M.O. with evidence of their pending and potential charges, respectively. She contends such evidence demonstrated each man's motive to fabricate with the hope that the state would show him leniency by cooperating against Todd. See Ariz. R. Evid. 607 ; State v. McElyea , 130 Ariz. 185, 187, 635 P.2d 170, 172 (1981).
¶ 12 As a general matter, criminal defendants are entitled to confront witnesses concerning their potential bias or hope of reward. See McElyea , 130 Ariz. at 187, 635 P.2d at 172. In our system of justice, "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." Davis v. Alaska , 415 U.S. 308, 315-16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Although trial courts retain broad discretion to preclude "repetitive and unduly harassing interrogation," the opportunity to impeach or discredit a witness, rather than merely test his perceptions and memory, is fundamental to confrontation under the Sixth Amendment. Id.
¶ 13 Accordingly, some cross-examination regarding pending or potential charges should be allowed when circumstances demonstrate a witness's testimony may be influenced by a promise, hope, or expectation of leniency in his own case. State v. Reynolds , 104 Ariz. 149, 150, 449 P.2d 614, 615 (1969), overruled in part on other grounds by State v. Harvill , 106 Ariz. 386, 391, 476 P.2d 841, 846 (1970) ; see State v. Little , 87 Ariz. 295, 300-01, 350 P.2d 756 (1960). Consequently, precluding cross-examination that would "clearly show" such a motive "is error and ... ground for a new trial." McElyea , 130 Ariz. at 187, 635 P.2d at 172, quoting State v. Holden , 88 Ariz. 43, 55, 352 P.2d 705 (1960). The test is one of relevance: whether the defendant has "been denied the opportunity of presenting to the trier of fact information which bears ... on the credibility of the witness." Id. , quoting State v. Fleming , 117 Ariz. 122, 125, 571 P.2d 268, 271 (1977).
¶ 14 Here, F.O.'s pending charge was relevant to whether he had a motive to fabricate because the very same agency prosecuting Todd had also brought a charge against him arising from an unrelated incident. This is especially so considering emails in the record between the prosecutor and F.O.'s attorney discussing both whether the state would bring additional charges and whether F.O. intended to plead the Fifth Amendment in response to any questions about his pending charge. Although we do not determine the level of detail to which the jurors should have been privy, at a minimum, they were entitled to know not only that F.O. was facing a charge, but also to hear directly from F.O. whether his testimony was animated by a promise, hope, or expectation of leniency in his own case.[2] See id. Thus, the court erred by entirely precluding Todd from impeaching F.O. with his potential motivations.[3]
*1153 ¶ 15 However, because reliable evidence corroborating F.O.'s testimony predated his need for leniency, the probative value of those charges was surely minimal, and any error in precluding this line of cross-examination was therefore harmless. See State ex rel. Morrison v. Jay Six Cattle Co. , 88 Ariz. 97, 106, 353 P.2d 185 (1960) (precluding impeachment evidence with "slight probative force" harmless). Although F.O.'s testimony established Todd's charge for aggravated assault with a deadly weapon, the record also establishes that F.O.'s statements at trial nearly duplicated statements he made well before charges had been filed against him; that is, before he had any need for leniency. In particular, F.O.'s statements at the time of the incident, captured on the 9-1-1 recordings, predate F.O.'s similar trial testimony that Todd had threatened him with a gun.
¶ 16 F.O. also testified regarding the charges arising from the shots Todd fired at his house. That testimony was corroborated by other evidence presented by the state: the 9-1-1 recordings confirm the fact and moment that shots were fired-less than a minute after Todd left by motorcycle. Furthermore, the video surveillance shows Todd leaving on a motorcycle and a motorcycle returning a minute later before two flashes are seen. Because F.O. had no motivation to fabricate at the time of his original statements to law enforcement, because his trial testimony closely tracked those statements, and because that testimony was strongly corroborated by direct and reliable evidence, no reasonable fact-finder would have doubted the substance of his testimony merely because he had acquired new charges in the interim for which he might have had a hope of leniency.[4] See Jay Six Cattle Co. , 88 Ariz. at 106, 353 P.2d 185.
¶ 17 The state's other civilian witness in the case was M.O., who testified that Todd had acknowledged firing shots from her motorcycle as she passed F.O.'s house. Todd sought to confront M.O. with the possibility that his testimony was motivated by a hope that the state would not file certain charges against him. Indeed, the record establishes that sheriff's deputies had seized a number of firearms from M.O.'s house after it burned down eight months before trial. And, before testifying and outside the presence of the jury, M.O. admitted he was therefore worried about being charged as a prohibited possessor.
¶ 18 Accordingly, Todd argues that because the state could have brought prohibited-possessor charges against M.O., he may have believed he had a "sword of Damocles" hanging over his head, "which could certainly influence his testimony." In view of his admission about being worried, M.O. had a potential motive to fabricate. That M.O. denied that his testimony was influenced by the worry of prosecution does not resolve the issue. Because jurors weigh evidence and determine the credibility of witnesses, see State v. Cid , 181 Ariz. 496, 500, 892 P.2d 216, 220 (App. 1995), they should have had the opportunity to determine for themselves whether M.O.'s fear of being charged motivated him to fabricate. Thus, Todd should have been allowed to cross-examine him before the jury about that concern and whether it was motivating M.O.'s testimony. However, given the circumstances of this case, we determine the error was harmless. See State v. Henderson , 210 Ariz. 561, ¶ 18, 115 P.3d 601 (2005).
¶ 19 Even if we disregard M.O.'s testimony-that Todd had admitted to firing shots in the air as she rode past F.O.'s house-the remaining evidence overwhelmingly demonstrates not only that Todd fired the shots, but that she fired them at F.O.'s home. See State v. Dann , 205 Ariz. 557, ¶ 19, 74 P.3d 231 (2003). In particular, as already mentioned, the video surveillance captured Todd *1154 leaving F.O.'s house by motorcycle and, less than a minute later, showed the same, or a very similar, motorcycle driving past the house followed by two flashes-events contemporaneously described in the 9-1-1 recording. Furthermore, the caliber of spent bullets found in the home matched the caliber of the gun deputies seized from Todd's home. Finally, Todd admitted to a deputy after her arrest that she had argued with F.O. at his home. These facts all strongly corroborated M.O.'s testimony that Todd had told him she fired her gun as she rode past F.O.'s house, and the jury could not have reasonably doubted that she had done so.
¶ 20 Furthermore, even without recourse to the improperly precluded line of questioning, the jury was confronted with issues regarding M.O.'s credibility, which further reduced the importance of the precluded impeachment testimony in the context of the overall case. In particular, M.O. frequently offered elusive answers and could not independently recall Todd's statements, despite having repeated them to the prosecutor less than a week before trial. Rather than suggesting he was cooperating in the hope of obtaining favorable treatment, M.O.'s evasive responses indicated otherwise. In view of the unique facts of this case, we can confidently say beyond a reasonable doubt that the error did not contribute to or affect the verdict.[5] See Henderson , 210 Ariz. 561, ¶ 18, 115 P.3d 601.
Willits Instruction
¶ 21 Todd next complains the trial court should have granted her request for a Willits[6] instruction because the state "[l]ost [r]ecordings" of her interview with a deputy and did not produce DNA[7] or fingerprint evidence from a gun deputies seized. We review the denial of a Willits instruction for an abuse of discretion. State v. Glissendorf , 235 Ariz. 147, ¶ 7, 329 P.3d 1049 (2014). "[W]hen a trial court refuses a jury instruction, we view the evidence on appeal in the light most favorable to the proponent of the instruction." State v. Almeida , 238 Ariz. 77, ¶ 2, 356 P.3d 822 (App. 2015).
¶ 22 "[A] defendant is entitled to an adverse-inference instruction when the state loses or destroys evidence that would have been useful to the defense, even if that destruction is innocent." Glissendorf , 235 Ariz. 147, ¶ 7, 329 P.3d 1049. To receive the instruction, a defendant must prove: "(1) the state failed to preserve material and reasonably accessible evidence that could have had a tendency to exonerate the accused, and (2) there was resulting prejudice." Id. ¶ 8, quoting State v. Smith , 158 Ariz. 222, 227, 762 P.2d 509, 514 (1988). Speculation will not suffice; "there must be a real likelihood that the evidence would have had evidentiary value." Id. ¶ 9.
¶ 23 Here, the deputy did not record his interview with Todd. He did, however, take notes and produce a written report memorializing that interview. Todd insists that, had her statements been captured, they "likely could provide some insight to the jury into her state of mind and her version of the events." But Todd has failed to describe any concrete exculpatory evidence that a recording would have contained and that the deputy's notes did not. Assuming arguendo that failure to record an interview equates with destruction of evidence, Todd has not demonstrated that any lost evidence had a tendency to exonerate her. See State v. Speer , 221 Ariz. 449, ¶¶ 40-41, 212 P.3d 787 (2009).
¶ 24 Similarly, the state's decision not to develop DNA or fingerprint evidence *1155 from the gun deputies seized does not constitute a loss or destruction of evidence. See State v. Ramirez , 178 Ariz. 116, 132, 871 P.2d 237, 253 (1994) (state does not have "constitutional duty to perform any particular tests"), quoting Arizona v. Youngblood , 488 U.S. 51, 59, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Of course, Todd was entitled to examine and test the gun herself, see Ariz. R. Crim. P. 15.1(e)(1)(A), but apparently elected not to do so. Accordingly, the trial court did not err by denying her request for a Willits instruction on these bases.
Sentencing
¶ 25 Finally, Todd complains her sentences constituted "double punishment," arguing the court was required to impose concurrent sentences for each charge of knowingly discharging a firearm at a residential structure with its corresponding charge of intentionally discharging a firearm from a motor vehicle at an occupied structure. See A.R.S. § 13-116 ; State v. Gordon , 161 Ariz. 308, 314-15, 778 P.2d 1204, 1210-11 (1989). "We review de novo a trial court's decision to impose consecutive sentences in accordance with A.R.S. § 13-116." State v. Urquidez , 213 Ariz. 50, ¶ 6, 138 P.3d 1177 (App. 2006).
¶ 26 As the state observes, the trial court did not impose consecutive sentences as Todd suggests, but rather "grouped" convictions for "the first shot" and did the same with "the second shot." Although the sentencing transcript and minute entry are not models of clarity, the court unquestionably intended to impose a combination of consecutive and concurrent sentences totaling 35.25 years. This is consistent with the total length that results from imposing concurrent sentences for counts related to "the first shot," concurrent sentences for "the second shot," and imposing those sentences consecutively both to each other and to the sentences for Todd's aggravated assault convictions.
¶ 27 Todd also insists the trial court did not properly consider her "mental and physical health as mitigating factors that would have made a lower sentence appropriate." "As a general rule, 'sentencing is the responsibility of the trial judge and, absent an abuse of discretion, the sentence will not be altered.' " State v. Fillmore , 187 Ariz. 174, 184, 927 P.2d 1303, 1313 (App. 1996), quoting State v. Mincey , 141 Ariz. 425, 445, 687 P.2d 1180, 1200 (1984). On review, we may find an abuse of discretion when a sentencing decision is arbitrary or capricious, or when the court fails to adequately investigate relevant facts. Id. As the state observes, however, the court imposed minimum or mitigated sentences for six of Todd's convictions and the presumptive sentence on the seventh. Although the court could have shown greater leniency, it was not required to do so, and nothing in the record suggests the court acted arbitrarily or capriciously or failed to investigate any relevant fact. See id. Accordingly, the court did not abuse its discretion.[8]
Disposition
¶ 28 For all the above reasons, we affirm Todd's convictions and sentences.

Todd also pled no contest to one count of misconduct involving weapons. That count is not at issue in this appeal.

In McElyea , our supreme court determined, under the particular facts of that case, that pending charges not yet the subject of a plea agreement lacked relevance to any potential motive the witness there might have had. The court, however, did not create a bright-line rule that pending charges are never relevant in the absence of a plea agreement. See 130 Ariz. at 187, 635 P.2d at 172. Rather, the particular facts of that case suggest the court viewed the pending charge as cumulative to a favorable plea agreement the witness had received in exchange for his testimony that was already in evidence. Id . at 186, 635 P.2d at 171 ; see Ariz. R. Evid. 403 (court may exclude relevant evidence if cumulative). Indeed, whether evidence is relevant necessarily depends on the individual facts of a case. State v. Gonzalez , 229 Ariz. 550, ¶ 1, 278 P.3d 328 (App. 2012).

Relying on Rule 608(b), Ariz. R. Evid., the state argues the trial court properly precluded this line of cross-examination because "this evidence went to other acts that did not result in a conviction." Except for certain criminal convictions, Rule 608 prohibits attacking a witness's credibility concerning his character for truthfulness or untruthfulness with extrinsic evidence. But Todd did not seek to impeach F.O.'s character; rather, she sought to impeach him with his possible motives to fabricate.

Below, Todd alleged that F.O.'s new charges resulted from either having lied or having committed forgery in an application to the Department of Health Services for a license to grow marijuana. Arguably, this would have involved a false statement within the meaning of Rule 608(b) and, therefore, might have been admissible on that ground. But we have concluded that reference to the new offense was admissible at any rate and, to the extent the underlying nature of those charges would have allowed further questioning as to F.O.'s general honesty, Todd has abandoned this argument on appeal by failing to raise it. See State v. Carver , 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989) (claims not argued on appeal are abandoned and waived).

Below, Todd more forcefully argued that M.O. had recently fabricated his testimony. She alleged that despite having participated in four earlier interviews, M.O. only first mentioned Todd's inculpatory statements at a fifth interview, six days before trial. Todd also indicated that a deputy had threatened M.O. with a "prison mandatory prohibited possessor charge." But, Todd does not repeat these arguments on appeal; instead, she merely relies on the general impeachment value inherent to the possibility of facing charges. Although such facts, if true, would increase the likelihood that M.O. was motived to fabricate in the state's favor, they ultimately do not change our calculation in view of the overwhelming evidence of Todd's guilt. See Dann , 205 Ariz. 557, ¶ 19, 74 P.3d 231.

State v. Willits , 96 Ariz. 184, 393 P.2d 274 (1964).

Deoxyribonucleic acid.

In her reply brief, Todd claims her sentence violates the Eighth Amendment prohibition against cruel and unusual punishment. This issue was not raised in Todd's opening brief. When an appellant raises a new substantive issue in a reply brief, this court may disregard that issue. State v. Aleman , 210 Ariz. 232, ¶ 9, 109 P.3d 571 (App. 2005).