NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JEFFREY ALVAREZ, *Appellant.*

No. 1 CA-CR 22-0273
FILED 7-13-2023

Appeal from the Superior Court in Maricopa County
No. CR2019-003621-001
The Honorable Suzanne E. Cohen, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey Ball
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Aaron J. Moskowitz
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge D. Steven Williams joined.

---

**P A T O N**, Judge:

¶1 Alvarez appeals his convictions and sentences for two counts of first-degree murder and one count each of attempted first-degree murder, conspiracy to commit first-degree murder, and possession of dangerous drugs. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2 We view the facts in the light most favorable to sustaining the jury's verdicts, resolving all inferences against Alvarez. *See State v. Reaves*, 252 Ariz. 553, 558, ¶ 2 (App. 2022). Gloria (a pseudonym) routinely sold methamphetamine to Salvador Moreno and his son, Salvador Medina. After one such sale, Moreno and Medina complained that the methamphetamine had been "cut" or "stepped on" with another substance, and threatened violence if Gloria did not fix the issue. Gloria agreed to bring Morena and Medina to her supplier, Joseph (a pseudonym), who wanted to see the drugs before agreeing to an exchange.

¶3 Moreno and Medina met Gloria in a restaurant parking lot near Joseph's apartment. Gloria drove there with her girlfriend, Nina (a pseudonym), who used a wheelchair. As the women waited in the two front seats of Gloria's car, the car's rear doors "flew open" and two males— Moreno and a person Gloria later identified as Medina's 17-year old friend, Alvarez—tried to enter it. Moreno could not get into the rear passenger-side seat because Nina's wheelchair blocked the seat. He directed Alvarez to remain in the vehicle and handed him a bag containing the allegedly defective methamphetamine.

¶4 Gloria drove Nina and Alvarez to Joseph's apartment building. Moreno and Medina followed her in a Dodge Charger. Nina remained in Gloria's parked car while Gloria, Moreno, Medina, Alvarez, and Joseph all met in the building's parking lot. Joseph and Moreno began arguing, and Joseph said he could not resolve the issue with the drugs until

2

he could meet his own supplier in the morning. Moreno insisted on holding Joseph hostage until the issue was resolved.

¶5            As the argument escalated into a standoff, Medina whispered something to Alvarez. Gloria heard Alvarez say, "right here, right now?" and Alvarez then began shooting at them with a gun. Within a matter of seconds, he struck Gloria five times in her torso and leg, ran to her car and shot Nina in the back of the head and upper back, and shot Joseph in the back of the neck, middle back, and torso. Alvarez fled with Moreno and Medina in the Charger.

¶6            A resident of the apartment building heard gunshots and saw a male getting into the rear passenger door of a Charger before it took off. The resident found Gloria and Joseph injured in the parking lot and called 911.

¶7            Police officers and emergency medical personnel arrived and pronounced Nina dead at the scene. Joseph was transported to the hospital, but later died from his injuries. Gloria survived. Police found a bag containing methamphetamine on the ground near the victims.

¶8            Officers obtained information that the shooter might be Alvarez, and Gloria identified him as such in a photo lineup. The gun used in the shootings was never found, but all of the shell casings and bullets retrieved at the scene appeared to have been shot from the same .40 caliber weapon—which could be narrowed down to a "small group" of firearms including a Glock. In Facebook messages about a week before the shooting, Alvarez communicated with someone about buying a Glock firearm. Alvarez's fingerprints were found on the bag containing the methamphetamine and on the exterior front passenger door frame of the Charger. A jury convicted Alvarez of the first-degree murders of Nina and Joseph, attempted first-degree murder of Gloria, conspiracy to commit first-degree murder, and possession of dangerous drugs. The superior court sentenced him to concurrent and consecutive prison terms that amount, in the aggregate, to life with a possibility of parole after 71 years. *See* A.R.S. § 13-716 (parole eligibility for juvenile offenders).

¶9            Alvarez timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1) and (4).

**DISCUSSION**

### I. The victim's testimony did not "open the door" to evidence of her prior murder conviction.

¶10      Years before Alvarez's trial, Gloria pled guilty to second-degree murder. The superior court granted the State's unopposed motion in limine and prohibited Alvarez from eliciting testimony about the substance and nature of Gloria's prior conviction.

¶11      When Gloria testified on direct examination about the moments before the shooting, she said:

> I remember seeing the defendant over by the car in the midst of this argument [between Joseph and Moreno], and I remember I turned around and I told [Medina], what the F is he doing over there? And it didn't dawn on me because we good people. We don't do nobody wrong like that. I didn't—I didn't further think of what I was feeling or what it could have been. I didn't think—I didn't put too much thought into it because I just didn't—that doesn't happen to people like us.

¶12      Alvarez argued that Gloria's testimony that she was a "good" person opened the door to rebuttal evidence of her prior murder conviction. The superior court disagreed, ruling that Gloria's statement did not open the door and that even if it did, evidence of the murder conviction "still would be unduly prejudicial." *See* Ariz. R. Evid. 403 (permitting exclusion of evidence whose danger of unfair prejudice outweighs its probative value).

¶13      Alvarez contends that the court's ruling was erroneous, violated his constitutional right to confrontation, and merits a new trial given the importance of Gloria's credibility to his case. *See* U.S. Const. amend. VI (ensuring an accused's right to confront witnesses against him); Ariz. Const. art. 2, § 24 (same). We review evidentiary rulings for an abuse of discretion, but we consider challenges under the Confrontation Clause de novo. *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006). The superior court abuses its discretion "if it misapplies the law or exercises its discretion based on incorrect legal principles." *State v. Reed*, 252 Ariz. 328, 331, ¶ 13 (2022) (citation omitted).

**¶14**         Alvarez acknowledges that he could not elicit the nature or substance of Gloria's prior murder conviction under Arizona Rule of Evidence ("Rule") 609.  But he contends that such evidence was admissible to contradict Gloria's characterization of herself as a "good" person who does not "wrong" others.  *See Pub. Serv. Co. of Okla. v. Bleak*, 134 Ariz. 311, 324–25 (1982) (holding that impeachment by contradictory evidence on a material issue is allowed); *cf. United States v. Castillo*, 181 F.3d 1129, 1132 (9th Cir. 1999) ("[T]he concept of impeachment by contradiction permits courts to admit extrinsic evidence that specific testimony is false, because contradicted by other evidence. . . .").

**¶15**         The superior court acted within its discretion in determining that Gloria did not open the door to evidence of her murder conviction. When Gloria testified about the dispute over the allegedly defective methamphetamine, she repeatedly emphasized that she and Joseph had "never had this issue before" and that any problem with the drugs they supplied Moreno and Medina "would be fixed."   Likewise, when she described the argument between Joseph and Moreno directly before the shooting, she testified that Joseph assured Moreno he would fix the problem in the morning.  Right after describing Joseph's assurances, Gloria gave the testimony quoted above in which she refers to being "good people" who "don't do nobody wrong like that."   Viewing Gloria's statement in context, the superior court could reasonably find that she was not describing herself as a morally "good" person who would not physically harm others, but as the kind of person who would not intentionally defraud her customers.  The court could reasonably conclude that Gloria's prior murder conviction did not contradict her testimony.

**¶16**         Similarly, the court did not abuse its discretion by deciding the probative value of admitting evidence of Gloria's prior conviction was substantially outweighed by the risk of unfairly prejudicing the jury.  *See State v. Gibson*, 202 Ariz. 321, 324, ¶ 17 (2002) ("Because [Rule 403 entails] a weighing of factors that cannot easily be quantified, substantial discretion is accorded the trial judge.") (citation omitted).  Even if Gloria's murder conviction would have contradicted her statement about being "good people," its probative value was minimal; it ran the risk of inflaming the jury and launching a collateral inquiry into Gloria's past, and was cumulative to other evidence used by Alvarez to impeach her credibility. *See State v. Thompson*, 252 Ariz. 279, 293, ¶¶ 42–43 (2022) (finding no abuse of discretion when the trial court precluded under Rule 403 evidence that had minimal probative value and was offered for a purpose addressed by other evidence); *State v. Zaid*, 249 Ariz. 154, 159, ¶ 17 (App. 2020) (noting that the superior court "would not have exceeded its discretion" by

precluding evidence of the victim's prior violent acts under Rule 403 when the defendant had "not established any reason the other violent acts would have been particularly probative" and "the evidence carried the risk that jurors might see the victim as a bad man who had gotten what he deserved"); *State v. Abdi*, 226 Ariz. 361, 367, ¶¶ 23–24 (App. 2011) (finding the trial court's exclusion of evidence on cross-examination to be permissible when the evidence involved a collateral issue, might have confused the jury, and would have been cumulative).

**¶17** We also reject Alvarez's argument that the superior court's ruling infringed upon his constitutional right to confrontation. While the opportunity for cross-examination is the principal right secured by the Confrontation Clause, *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974), that right is not unlimited, *State v. Riggs*, 189 Ariz. 327, 331 (1997). *See also Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.") (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). We assess the reasonableness of cross-examination restrictions under the Confrontation Clause "on a case-by-case basis." *State v. Fleming*, 117 Ariz. 122, 125 (1977). "The test is whether the defendant has been denied the opportunity of presenting to the trier of fact information which bears either on the issues in the case or on the credibility of the witness." *Id.*

**¶18** Here, jurors were told that Gloria was a longtime drug dealer. They also heard evidence that she had two prior felony convictions for possession of methamphetamine, was high on methamphetamine at the time of the shootings, received immunity for her testimony in this case, and sought additional benefits for providing her testimony. The superior court's refusal to admit evidence of Gloria's prior murder conviction did not violate Alvarez's right to confrontation because the prior conviction had no bearing "on the issues in the case" and Alvarez had ample opportunity to challenge "the credibility of the witness." *See id.* at 125.

## II. Alvarez's sentences do not violate the Eighth Amendment.

**¶19** Alvarez contends that the superior court violated his Eighth Amendment rights by sentencing him to terms that cumulatively amount to a natural life sentence without adequately considering his "transient immaturity" as required under *Miller v. Alabama*, 567 U.S. 460, 479–80 (2012).

¶20   The United States Supreme Court has said that the Eighth Amendment "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders" and allows courts the discretion to impose a sentence of life without the possibility of parole on juveniles convicted of homicide only after the sentencer "take[s] into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Miller*, 567 U.S. at 479–80; *see also Graham v. Florida*, 560 U.S. 48, 70 (2010) (describing the harshness of sentences denying parole, especially for juveniles).

¶21   Our supreme court recently considered and rejected Alvarez's argument in *State v. Soto-Fong,* to hold that *Miller, Graham*, and *Montgomery v. Louisiana*, 577 U.S. 190 (2016), did "not prohibit consecutive sentences imposed for separate crimes when the aggregate sentences exceed a juvenile's life expectancy." 250 Ariz. 1, 12, ¶ 50 (2020). "On questions of federal constitutional law, we are bound by decisions of our supreme court absent a subsequent decision of the United States Supreme Court on the same subject." *State v. Zamora*, 220 Ariz. 63, 69, ¶ 15 n.7 (App. 2009).

¶22   And this court's recent decision in *State v. Agundez-Martinez*, 254 Ariz. 452 (App. 2023), which Alvarez also cites in support of his argument, does not change our analysis. *Agundez-Martinez* involved a defendant who was sentenced to mandatory consecutive prison terms for non-homicide offenses he committed when he was between 10 and 12 years old. *Id.* at 465, ¶ 62. Given the similarity of Alvarez's case to *Soto-Fong*, and the dissimilarity of his case to *Agundez-Martinez*, we are not persuaded that *Agundez-Martinez*'s rationale for considering the cumulative effect of consecutive sentences applies to Alvarez.

## CONCLUSION

¶23   We affirm Alvarez's convictions and sentences.

